UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ZACHERY A. PENRICE,

Plaintiff,

v.

CORPORAL DAVID SZOKOLA, of the
Taylor Police Department, in his
individual capacity, PATROLMAN
CHRISTOPHER CATES, of the Taylor
Police Department, in his individual
capacity, and PATROLMAN JOSEPH
SCHNEIDER, of the Taylor Police
Department, in his individual capacity,

Defendants.

Case No. 14-cv-14342

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [26]**

**I. INTRODUCTION**

Zachery A. Penrice ("Penrice" or "Plaintiff") commenced this action on

November 12, 2014 against Corporal David Szokola, Patrolman Christopher Cates,

and Patrolman Joseph Schneider (collectively "Defendants"). *See* Dkt. No. 1.

Plaintiff contends that Defendants are liable for: (I) Violation of Plaintiff's

constitutional rights as guaranteed by the Fourth and Fourteenth Amendments to

the United States Constitution under 42 U.S.C. § 1983; (II) Assault and Battery;

(III) False Arrest/Imprisonment; and (IV) Malicious Prosecution. *Id.* at 8–11 (Pg. ID No. 8–11).

On December 4, 2015, Defendants filed a Motion for Summary Judgment on all counts. *See* Dkt. No. 26. The matter is fully briefed. After reviewing the briefing, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the Motion on the briefs as submitted. *See* E.D. Mich. L.R. 7.1(f)(2).

For the reasons discussed below, the Court will **GRANT IN PART** and **DENY IN PART** the Motion for Summary Judgment.

## II. Background

On March 12, 2013, at approximately 4:00 p.m., the Plaintiff was traveling southbound, in a rental car, on I-75 from Detroit, Michigan toward Toledo, Ohio. Dkt. No. 29 at 5 (Pg. ID No. 248). Plaintiff alleges that he was traveling exclusively in the left-most lane. *Id.* Plaintiff asserts that he was not speeding. A police vehicle, driven by Defendant Szokola, maneuvered behind Plaintiff and signaled Plaintiff to pull over. *Id.* In response, Plaintiff asserts that he put on his turn signal and began to move toward the right shoulder. *Id.* Due to the traffic, Plaintiff slowed down in order to get across the traffic. *Id.*

Eventually, Plaintiff was able to maneuver his vehicle to the far right lane and stopped along the right shoulder with Defendant Szokola behind him. *Id.* at 6

(Pg. ID No. 249). Plaintiff asserts that there was limited space due to a large retaining wall at that spot. *Id.* Plaintiff further asserts that he "made eye contact with the police officer and motioned by using his left arm to point over his head to the right side of the road that he was going to move to a safer spot." *Id.*

Plaintiff proceeded to drive his car and stop at a safer location. *Id.* Defendant Szokola approached the car and requested his name, where he had been, for his license and a copy of the car rental agreement. *Id.* Shortly after, two additional patrol cars arrived on the scene, one of which containing Defendants Cates and Schneider. *Id.* Defendants assert that Defendant Szokola had requested back up while Plaintiff was maneuvering through traffic toward the right lane. Dkt. No. 26 at 17–18 (Pg. ID No. 134–35).

After his backup arrived, Defendant Szokola asked Plaintiff to exit and walk to the back of Plaintiff's car. Dkt. No. 29 at 7 (Pg. ID No. 250). He complied and walked to the back of his car where Defendants Cates and Schneider were standing. *Id.* Plaintiff contends that, "[w]ithout warning, Szokola reached into Penrice's coat pocket." *Id.* In reaction, Plaintiff claims that he grabbed the top of his coat, pulled it tight, and asked Defendant Szokola whether he was supposed to tell a person that he is going to search him.[1] *Id.* Plaintiff then put his hands in the

---

[1] The Defendants testified at their depositions that Plaintiff had grabbed Defendant Szokola's wrist.

air and said "he did not want to hurt anyone and he did not want them to hurt him."
*Id.*

The police officers then ordered Plaintiff to put his hands on the trunk of his car. *Id.* After Plaintiff complied with the order, Defendant Szokola frisked Plaintiff for weapons. *Id.* Next, Plaintiff was ordered to walk toward the police car. Plaintiff alleges that while walking to the police car, "Defendant Cates suddenly announced that he was under arrest, shoved him from behind and forced him down on the trunk of the car, while Schneider smashed his head down on the car." *Id.* at 8 (Pg. ID No. 251). Plaintiff alleges that he "suffered bruises and abrasions to his face and chest." *Id.*

Plaintiff was arrested and transported to the Taylor police department where he was lodged from 7:00 p.m. on March 12, 2013 until his release on March 14, 2013. *Id.* While confined, Plaintiff asserts that he was not allowed to make a phone call. *Id.*

Later, the Taylor police made a request for a warrant. *Id.* Plaintiff alleges that the request "contains many untruthful factual statements, including the following:

> (1) that Penrice was weaving in and out of travel on southbound I-75; (2) that after Szokola put on his lights, Penrice continued to weave in and out of the middle and far right lane; (3) that Penrice threw something out of his window before continuing southbound into Brownstown township; (4) that Penrice refused to cooperate with the officers when he was patted down; (5) that Penrice physically pulled

his wrist away from Szokola and advised Szokola not to grab him when he was being checked for weapons and contraband; and (6) that Penrice attempted to pull away from Cates and Schneider when they were in the process of trying to put handcuffs on him with his arms behind his back."

*Id.* at 8–9 (Pg. ID No. 252).

Plaintiff was charged with fleeing and eluding and assaulting and/or resisting arrest. *Id.* at 9. The preliminary examination was held on March 25, 2013. *Id.* On August 2, 2013, after a two day jury trial, the jury issued a finding of not guilty on all counts. *Id.*

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacky*, 729 F.3d 610, 619 (6th Cir. 2013). There is no dispute that the Defendants involved in the present action were acting under the color of state law.

In the complaint, Plaintiff alleges five instances in which his Fourth and Fourteenth Amendment rights were violated:

   a.  Arresting and falsely imprisoning Plaintiff without probable cause;

   b.  Searching the person of the Plaintiff without reasonable suspicion and/or probable cause that criminal activity was occurring;

   c.  Using excessive and unreasonable force in attacking, restraining and arresting the person of Plaintiff, Zachery Penrice;

   d.  In prompting the prosecution of Plaintiff for three criminal high misdemeanors/felonies without probable cause;

   e.  Denying Plaintiff reasonable opportunity to post bond and secure his freedom from the aforementioned described illegal incarceration and/or in denying Plaintiff the reasonable opportunity

to communicate with his family, or an attorney, as to his whereabouts following the described illegal incarceration.

Dkt. No. 1 at 8 (Pg. ID No. 8). The Court shall analyze each claim in turn.

### a. *Arresting and Falsely Imprisoning Plaintiff Without Probable Cause*

Plaintiff alleges two events that resulted in the violation of his constitutional rights against unreasonable seizures: (1) being subjected to an unreasonable investigatory stop; and (2) being arrested without probable cause.

### i. Defendant Szokola's Investigatory Stop

Plaintiff argues that his Fourth Amendment rights against unconstitutional seizures were violated when he was pulled over by Defendant Szokola. *See* Dkt. No. 29 at 11 (Pg. ID No. 254). This claim would not apply to Defendants Cates and Schneider.

"[A]n officer may seize an individual without offending the Fourth amendment if the 'officer has reasonable suspicion that criminal activity may be afoot.' " *Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012) (quoting *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008)). Whether or not an officer has the requisite quantum of proof to execute an investigatory stop ("a *Terry* stop"), including traffic-stops, is determined by the totality of the circumstances. *United States v. Galaviz*, 645 F.3d 347, 353 (6th Cir. 2011). "Reasonable suspicion requires more than a 'mere hunch,' but 'less than probable cause, and falls

considerably short of satisfying a preponderance of the evidence standard.' "
*Hoover*, 682 F.3d at 494 (quoting *Campbell*, 549 F.3d at 371). "The same Fourth
Amendment test applies to vehicle stops." *Houston v. Clark County Sheriff Deputy
John Does 1–5*, 174 F.3d 809, 813 (6th Cir. 1999).

Here, Plaintiff was traveling southbound on I-75 between 60 and 70 miles
per hour. It is undisputed that Plaintiff was not speeding. The police report states
that Plaintiff was pulled over for "weaving in and out of traffic." Dkt. No. 26
(Exhibit D, p. 4). At the preliminary exam, Defendant Szokola testified that he saw
Plaintiff "[h]itting the fog line and swerving in and out of his traffic lane." Dkt.
No. 29 (Exhibit 6, p. 16). However, Plaintiff claims that he was in the left lane of
southbound I-75 the entire drive. Dkt. No. 29 at 11 (Pg. ID No. 254); *see also id.*
(Penrice Dep., pp. 114–15).

Both parties agree that after the Plaintiff passed Defendant Szokola on the
freeway, that Szokola maneuvered his vehicle behind Plaintiff and turned on his
police lights. Dkt. No. 29 at 5 (Pg. ID No. 248); Dkt. No. 26 at 11 (Pg. ID No.
128)*. Plaintiff testified that once Defendant Szokola turned on his lights he
immediately tried to pull over to the right. Dkt. No. 29 (Penrice Dep., p. 122).

Under Plaintiff's version of the facts, Plaintiff had not broken any laws by
the time Defendant Szokola turned on his police lights. Furthermore, Plaintiff
attempted to pull over immediately after seeing the lights, and thus had surrendered

to the authority of the police officer. At that point he had been seized for a *Terry* stop. *Terry*, 392 U.S. at 19 n.16; *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("[H]is surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment."); *see also United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) ("Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment."); *see also United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). Therefore, a reasonable juror could find that Plaintiff had been seized without the requisite "reasonable suspicion" and his constitutional right against unreasonable seizures violated. Accordingly, the claim against Defendant Szokola survives on this ground.

### ii.   Arrest and Imprisonment Without Probable Cause

Plaintiff was arrested for fleeing and eluding. Plaintiff argues that the Defendants did not have probable cause to arrest Plaintiff. Dkt. No. 29 at 11 (Pg. ID No. 254). "The Supreme Court has defined 'probable cause' as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). "If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual

motives are irrelevant." *Id.* (citing *Scott v. United States*, 436 U.S. 128, 138 (1978)). "The question becomes, viewing the facts in a light most favorable to plaintiff, whether the arresting officers were justified in their belief that plaintiff had probably committed or was committing a crime." *Id.*

### 1.  Fleeing and Eluding

Under Michigan law, the statute for fleeing and eluding reads:

> An operator of a motor vehicle or vessel who is given by . . . visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the operator to bring his or her motor vehicle or vessel to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle or vessel, extinguishing the lights of the vehicle or vessel, or otherwise attempting to flee or elude the police or conservation officer.

Mich. Comp. Laws § 750.479a.

Defendants argue that probable cause was established when Plaintiff decided to attempt to get to the right lane of the freeway instead of pulling his car over on the left shoulder. Dkt. No. 26 at 16 (Pg. ID No. 133). This argument is not persuasive. According to Plaintiff and Defendant Szokola, upon seeing police lights, Plaintiff slowed his car down from 70 mph to around 40 mph. Dkt. No. 29 (Penrice Dep., at p. 123); *see also id.* (Szokola Dep., at p. 48). Had Plaintiff increased his speed, as § 750.479a forbids, there would have been probable cause for the fleeing and eluding. However, no reasonable officer would presume that

-10-

Plaintiff was trying to elude capture by slowing down, using his turn signal, and attempting to get into the right shoulder.

Next, Defendants point to the fact that after Plaintiff pulled over to the right shoulder, he decided to move his car further down the freeway. Defendants argue that "[t]his, too gave Cpl. Szokola probable cause" for the arrest. Dkt. No. 26 at 16 (Pg. ID No. 133). However, with the evidence being viewed in the light most favorable to the Plaintiff, this argument holds little water.

According to Plaintiff, "Penrice made eye contact with the police officer and motioned by using his left arm to point over his head to the right side of the road that he was going to move to a safer spot." Dkt. No. 29 at 6 (Pg. ID No. 249). Plaintiff provides evidence that he received a signal from Defendant Szokola, acknowledging that he could proceed:

> Q. So after five seconds you decide to take off and where do you go?
>
> A. Well after I got the *head gesture from him* and he knew where I was going I immediately went past the merging traffic that was coming on and I went to the side of the road on the right-hand side.

Dkt. No. 29 (Penrice Dep. at p. 133) (emphasis added).  Under this version of the facts, probable cause for fleeing and eluding did not exist.

### 2.  Defendants Cates and Schneider

Defendants argue that the claims against Defendants Cates and Schneider should fail as a matter of law. Dkt. No. 26 at 17–18 (Pg. ID No. 133–34). They

argue that because Defendants Cates and Schneider "reasonably and justifiably relied" on information that came in over the dispatch, as well as information from Defendant Szokola, that they had probable cause to arrest Plaintiff. *Id.* Plaintiff's response brief does not address the actions of Defendants Cates and Schneider.

Defendants' brief points to a Seventh Circuit case, *United States v. Mounts*, 248 F.3d 712 (7th Cir. 2001), to support their position. However, *Mounts* is distinguishable. In *Mounts*, the police officers relied on information from dispatch *in addition* to facts available to them at the scene. *Id.* at 716 ("They knew that Mounts had a revoked Illinois driver's license and the troopers were informed that the revocation was still in effect. They also knew that an individual operating a motor vehicle with a driver's license in a revocation status (still in effect) could not legally obtain a driver's license in Texas.").

*Mounts* relies on the Supreme Court case, *U.S. v. Hensley*, 469 U.S. 221 (1985). In *Hensley*, the Court held that the constitutionality of an arrest made in reliance on information gained from another officer turns on whether or not the informing officer had probable cause to make the arrest himself. *Id.* at 231 ("[W]hen evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who issued the flyer possessed probable cause to make the arrest."); *see also id.* ("We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts

-12-

supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification.").

Therefore, whether or not Defendants Cates and Schneider had probable cause to make an arrest in reliance on the word of Officer Szokola is dependent upon Szokola himself having probable cause to arrest at the time the word was given. As stated above, when viewed in the light most favorable to Plaintiff, Officer Szokola did not have probable cause to arrest Plaintiff for fleeing and eluding. Accordingly, Officers Cates and Schneider also lacked probable cause to make an arrest at the time they were informed on their dispatch radio.

### 3.  Grabbing Defendant Szokola's Wrist

Before the arrest was made, Defendants assert that the Plaintiff grabbed Defendant Szokola's wrist during an attempted pat-down. *See* Dkt. No. 29 (Exhibit 5, p. 45); *see also id.* (Schneider Dep. at p.42). Plaintiff denies this claim. *See* Dkt. No. 29 at 15 (Pg. ID No. 258) ("He had no weapons and was not threatening any of the officers. He did not strike an officer. At most, he flinched when Szokola grabbed his penis without warning."). If Plaintiff in fact did grab the officer's wrist, then at that point, Defendants would have had probable cause to make an arrest for battering an officer performing his or her duties. MICH. COMP. LAWS § 750.479(1)(a).

-13-

Under Michigan law, a person shall not knowingly and willfully do any of the following:

> Assault, batter, wound, obstruct, or endanger a medical examiner, township treasurer, judge, magistrate, probation officer, parole officer, prosecutor, city attorney, court employee, court officer, or other officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.

MICH. COMP. LAWS § 750.479(1)(a). "[T]he statute is 'intended to protect police officers engaged in ordinary police functions, including those that do not directly involve placing a person under arrest.' " *People v. Green*, 260 Mich. App. 392, 401 (2004) *overruled on other grounds by People v. Anstey*, 476 Mich. 436 (2006) (quoting *People v. Wess*, 235 Mich. App. 241, 243 (1999)).

Here, the arrest was made for fleeing and eluding, not for battery of a police officer. However, for a claim of false arrest, this does not matter. The motivations of the arresting officer are not relevant. *Devenpeck v. Alford*, 543 U.S. 146, 154–55 (2004) ("Subjective intent of the arresting officer, *however* it is determined (and of course subjective intent is *always* determined by objective means), is simply no basis for invalidating an arrest."); *see also Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause."). Furthermore, it does not matter that the *Terry* stop may have been invalid.

-14-

As the Sixth Circuit has noted, "the 'fruit of the poisonous tree' doctrine . . . cannot apply in this context to prevent officers from arresting those who commit crimes *during* an unconstitutional search, seizure, or interrogation. If the doctrine did cover such situations, an individual who is unconstitutionally seized would have license to commit any offense he or she desired and could not be arrested for it." *Feathers*, 319 F.3d at 852 n.2.

However, because there is a dispute of material fact over this fact, summary judgment may not be granted on this ground. Accordingly, the claim for false arrest survives.

> ### b. *Searching the Person of the Plaintiff Without Reasonable Suspicion and/or Probable Cause that Criminal Activity was Occurring*

Plaintiff next argues that he was subjected to an illegal "stop-and-frisk." Dkt. No. 29 at 13 (Pg. ID No. 256). Defendants argue that the pat down was in fact a search incident to an arrest that "may be conducted whether or not the arrest has been made at the time the search is conducted." Dkt. No. 31 at 5 (Pg. ID No. 471). As support, Defendants rely on *People v. Champion*, 452 Mich. 92, 549 N.W.2d 849 (1996).

"A search conducted immediately before an arrest may be justified as incident to arrest if the police have probable cause to arrest the suspect before conducting the search." *Champion*, 452 Mich. at 115 (citing *Rawlings v. Kentucky*,

448 U.S. 98, 100 (1980)). As stated above, under Plaintiff's version of the facts, at the time Defendant Szokola pulled over Plaintiff, probable cause did not yet exist for the arrest. Therefore, any attempt to conduct a search incident to an arrest within the meaning of the Fourth Amendment at that time would have been invalid. Accordingly, this claim survives the motion as well.

### c.  Excessive Force

Plaintiff also argues that Defendants used excessive force when effectuating the arrest by unnecessarily forcing him against the car and forcibly pushing his head onto the trunk of the vehicle.

The validity of excessive force claims brought under § 1983 is not governed by a single generic standard; rather, the Court must identify a specific constitutional right allegedly infringed, and then judge the claim by reference to the specific constitutional standard which governs that right. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id*. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth

Amendment interests' against the countervailing governmental interests at stake."
*Id.* at 395 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The "reasonableness" of a particular use of force must be judged from the
perspective of a reasonable officer on the scene, rather than with the 20/20 vision
of hindsight. *See Terry*, 392 U.S. at 20–22. "With respect to a claim of excessive
force, the same standard of reasonableness at the moment applies: 'Not every push
or shove, even if it may later seem unnecessary in the peace of a judge's
chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396. "[T]he
question is whether the officers' actions are 'objectively reasonable' in light of the
facts and circumstances confronting them, without regard to their underlying intent
or motivation." *Id.* at 397. "Courts evaluating the reasonableness of force used
should pay particular attention to 'the severity of the crime at issue, whether the
suspect poses an immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade arrest by flight.' "
*Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (quoting *Graham*, 490 U.S. at
396.).

Here, Plaintiff was stopped for a lane violation and fleeing and eluding (after
voluntarily stopping for the police officer twice). Defendants had already frisked
the Plaintiff prior to arresting him, therefore they knew that he was not carrying
any weapons. Furthermore, according to Plaintiff, Plaintiff was fully compliant

with the officers. There is no indication that Plaintiff tried to flee during the course of the arrest.

If Plaintiff had been fully compliant, as he has evidenced, then the act of shoving and slamming Plaintiff's face against the trunk of a car would have been unreasonable. To hold otherwise would be to grant police officers the ability to arrest any suspect in the same fashion, *no matter what* the underlying circumstances may be at the moment. Therefore, at the very least, there is a genuine issue of material fact as to the reasonableness of the force used during the course of the arrest. Accordingly, excessive force claim survives the motion.

Defendants argue that *Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2004) should govern. However, *Dunigan* is distinguishable. In *Dunigan*, several police officers, accompanied by a police dog, entered a home in an attempt to find a fugitive. *Id.* at 489. During the midst of the search, one of the police officers pushed past the Plaintiff, who was standing in his path. *Id.* After the police officer pushed the Plaintiff, the police dog bit the Plaintiff three times. *Id.* The Sixth Circuit characterized the scene as "a rapidly-evolving, highly-volatile situation which precluded the luxury of calm and reflective pre-response deliberation." *Id.* at 494.

> At the time the push occurred, Officer Noble's focus was on Quincy Dunigan. Officer Noble knew (1) Quincy had been a fugitive from the law for nearly a year and might attempt to flee, (2) at least one unidentified individual was in the basement directly below, and (3)

-18-

that individual posed a potential threat by refusing to show his hands
as ordered. Moreover, Officer Noble did *not* have cover on his back
side and did *not* know who else was in the home. He could not see
into the basement from his location on the kitchen stairs. Amidst all
these uncertainties, Officer Noble applied force to Plaintiff's back or
shoulder in closely confined quarters causing her to momentarily lose
her balance and stumble down one step of stairs towards Kojak.

*Dunigan*, 390 F.3d at 494 (citations omitted). The police officer involved in

*Dunigan* did not intend for the dog to bite the Plaintiff, nor were they even

arresting the Plaintiff in that case. *Id.* ("Officer Noble stated without contradiction

that he did not call for a police dog, is not trained in handling police dogs, and does

not know their commands.").

Here, there were three police officers and only one civilian at the scene.

There was neither a police dog, nor any other potential threats. Defendants knew

that Plaintiff was unarmed, and his hands were in plain sight at all times. For

Defendants to characterize *Dunigan* as "less chaotic" than the present case is at

best a stretch, and at worst *purely disingenuous*. Dkt. No. 26 at 21 (Pg. ID No.

138).

### d. Malicious Prosecution

Defendants have also moved for the dismissal of Plaintiff's malicious

prosecution claim. To succeed on a malicious prosecution claim under § 1983

when the claim is premised on a violation of the Fourth Amendment, a plaintiff

must prove the following: (1) the plaintiff must show that a criminal prosecution

was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution; (3) the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding must have been resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). The fact that Plaintiff was deprived of his liberty and that the criminal proceeding was resolved in his favor is not in dispute. "This circuit has never required that a plaintiff demonstrate 'malice' in order to prevail on a Fourth Amendment claim for malicious prosecution." *Id.* at 309.

### i. Role in the Decision to Prosecute

Defendants principally argue that "there is no evidence that any or all of the Defendants acted maliciously or initiated the criminal prosecution against Plaintiff as the prosecutor issued the charges after the report was submitted by Cpl. Michowski to the prosecutor's office." Dkt. No. 26 at 18–19 (Pg. ID No. 135–36).

As stated above, a showing of 'malice' is (ironically) not required to prove malicious prosecution. Furthermore, as the *Sykes* Court noted, "the fact that [Defendants] did not make the decision to prosecute does not per se absolve them

-20-

from liability. Instead, the [Plaintiff is] entitled to prove that the Defendants either 'influenced or participated in the decision to prosecute.' " *Sykes*, 625 F.3d at 311 (citing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). In other words, if the police officers were a proximate cause of the prosecution, then this element is satisfied. *Id.* at 313–15 ("And holding Sgt. Anderson liable for all reasonably foreseeable consequences of his initial misdeeds finds support in the Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L. Ed. 2d 271 (1986).").

### 1.  Defendant Szokola

When a police officer testifies at a preliminary hearing, if a reasonable jury could conclude that the officer testified falsely, and that the statements were material to the state court's finding of probable cause, then the first element of malicious prosecution has been satisfied. *Id.* at 312.

Defendant Szokola testified at the March 23, 2013 preliminary hearing. There, Defendant Szokola made several assertions:

Q: And the vehicle made a lane violation?

A: Yeah, it was weaving in and out of its lane.

…

A: I pulled out on the vehicle. I activated my overhead lights to stop the vehicle.

Q: And did the vehicle stop?

A: No, it did not.

Q: Okay. So what did you do then?

A: I continued southbound about two—two and a half car lengths behind the vehicle with my lights on, used my air horn on several occasions. I continued approximately two miles, actually into the city of Brownstown, and then the vehicle pulled over.

. . .

Q: Okay. What was the tone of his voice?

A: It was brash and confrontational.

Q: Okay. Okay.

A: At which time I returned to the vehicle based on the fact that I already had enough to remove him from the vehicle for not stopping the vehicle. I do like to have a history if I believe a crime is afoot, which I did.

Q: And what crime did you believe was afoot?

A: Fleeing and eluding at that point for not stopping, --

Q: Okay.

A: --which could lead to a whole number of different things, whether someone, you know, be in possession of narcotics or have warrants for their arrest, or whatnot.

Dkt. No. 29 (Exhibit 5, pp. 7–11). Based on the evidence in the instant case, a reasonable jury could have concluded that Defendant Szokola testified falsely at the preliminary hearing and that his statements were material to the state court's

finding of probable cause. Therefore, the malicious prosecution claim in regards to Defendant Szokola survives.

### 2. Defendants Cates and Schneider

Plaintiff has not provided similar evidence for Defendants Cates and Schneider. Therefore, Plaintiff has not met his burden of proving that Defendants Cates and Schneider initiated, participated in, or influenced the decision to prosecute. Accordingly, the Fourth Amendment malicious prosecution claims against these two Defendants must be dismissed.

### ii. Lack of Probable Cause

Defendants also argue that they did have probable cause to arrest the Plaintiff. However, as stated above, the question of whether or not probable cause existed should be submitted to a jury. Accordingly, the malicious prosecution claim against Defendant Szokola should also go to a jury.

### e. *Denying Reasonable Opportunity to Post Bond*

Neither party has briefed this issue. Defendants did not move for its dismissal, and accordingly, Plaintiff has not provided evidence of the claim's validity. The Court, therefore, shall treat this as if it is still a viable claim.

## B. Qualified Immunity

Defendants argue that they are entitled to qualified immunity against the § 1983 claims. Dkt. No. 26 at 22 (Pg. ID No. 139).

To defeat the defense of qualified immunity, "Plaintiff[] bear[s] the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation." *Essex v. County*, 518 Fed. Appx. 351, 357 (6th Cir. 2013); *see also*, *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Under Plaintiff's version of the facts, there were several constitutional violations: (1) the illegal *Terry* stop; (2) the illegal stop-and-frisk; (3) the use of excessive force; and, as to Defendant Szokola, (4) the malicious prosecution. The lone remaining inquiry is whether or not the Defendants violated clearly established law.

An officer is entitled to qualified immunity where "clearly established law does not show that the [action] violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.' " *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

The right to be free of an unreasonable investigatory stop was clearly established in *Terry*. The right to be free of an unreasonable stop-and-frisk was clearly established in *Arizona v. Johnson*. The right to be free of excessive force

was clearly established in *Graham* as well as in *Byrne v. Bero*, No. 13-15118, 2015 WL 3476956 (E.D. Mich., June 2, 2015) (finding that taking the Plaintiff to the ground was excessive when the *Graham* factors weighed in Plaintiff's favor). And the right to be free from a malicious prosecution was clearly established in *Sykes*.

The applicability of qualified immunity with regard to these claims thus solely turns on the facts that the jury chooses to accept, and therefore the Defendants are not entitled to qualified immunity at this time. *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000).

### C. State Claims Under Michigan Constitution

Defendants argue that the claims under the Michigan Constitution must be dismissed because "there is no inferred 'damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee.' " Dkt. No. 26 at 25 (Pg. ID No. 142) (quoting *Jones v. Powell*, 462 Mich. 329, 335 (2000)).

State constitutional claims such as Plaintiff's are recognized only if there are no other available remedies. *Jones*, 462 Mich. at 335. Plaintiff has validly brought suit under 42 U.S.C. § 1983, therefore the state constitutional claims should be dismissed.

### D. State Claims of Assault and Battery, False Arrest/Imprisonment and Malicious Prosecution

Plaintiff also filed state law claims for assault and battery, false arrest and malicious prosecution. *See* Dkt. No. 1. Defendants move for the dismissal of these claims.

#### a. *Assault and Battery*

"Under Michigan law, an individual may bring an assault and battery claim against officers who use[] more force than reasonably necessary in effecting an arrest, and actions which would normally constitute intentional torts are protected by governmental immunity only if those actions are justified." *Lawler v. City of Taylor*, 268 Fed. Appx. 384, 388 (6th Cir. 2008) (quotations omitted). As was the case in *Lawler*, triable issues of fact exist over whether Defendants used "objectively unreasonable force." *Id.* Therefore, the state law claim for assault and battery survives summary judgment.

#### b. *False Arrest and False Imprisonment*

Under Michigan law, "[t]o prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003). As stated above, the determination of probable cause should be submitted to a jury. Accordingly, this claim as well must go forward.

### c. Malicious Prosecution

Under Michigan law, for a malicious prosecution claim, "[t]he plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings were terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 378 (1998). The fact that the criminal proceeding was terminated in Plaintiff's favor is not in dispute.

### i.  Initiation of the Criminal Proceedings

When dealing with malicious prosecution claims against police officers, the Michigan courts have distilled this element to a single rule: "[T]he only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause." *Belt v. Ritter*, 18 Mich. App. 495, 503 (1969). "It is well settled that one who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution." *Payton v. City of Detroit*, 211 Mich. App. 375, 395 (1995).

As state above, a reasonable jury could conclude that Defendant Szokola was not entirely truthful in his statements made at his preliminary hearing. Those same statements were included in Defendant Szokola's incident report. *See* Dkt. No. 26 (Exhibit D). Thus, the analysis, as it pertains to Defendant Szokola, proceeds to the next step. However, there is no evidence in the record that Defendants Cates and Schneider also swore to false testimony. Therefore, the malicious prosecution claim against Defendants Cates and Schneider fail.

### ii.  Lack of Probable Cause and Malice

As stated above, the question of probable cause should be submitted to a jury. Furthermore, it is well settled that a jury may infer malice upon a finding of probable cause. *Flones v. Dalman*, 199 Mich. App. 396, 405 (1993) ("The jury concluded that probable cause was lacking, and was permitted to infer malice from that conclusion."). Therefore, the question of malice is for the jury as well. Accordingly, the claim against Defendant Szokola will survive.

### E. Governmental Immunity Under State Law

Finally, Defendants argue that they are entitled to governmental immunity on the state law claims. The standard for governmental immunity is different depending on the type of tort alleged. Here, Plaintiff has pled intentional torts.

"[T]o be immune from liability for intentional torts, the governmental employee must first establish that the acts were taken 'during the course of . . .

employment' and that the employee was 'acting, or reasonably believe[d] [he was] acting, within the scope of [his] authority[.]' " *Odom v. Wayne Cty.*, 482 Mich. 459, 473 (2008) (quoting *Ross v. Consumers Power Co.*, 420 Mich. 567, 633 (1984)). "The governmental employee must also establish that he was acting in good faith." *Id.* "[T]here is no immunity when the governmental employee acts maliciously or with a wanton reckless disregard of the rights of another." *Id.* at 474. Furthermore, the acts involved must be discretionary, not ministerial. *Id.* at 476. The burden is on the government to prove every element in order to be granted immunity.

The claims of false arrest, false imprisonment, and assault and battery all stem from the discretionary function of Defendants' responsibilities as police officers arising during the course of their employment. *Id.* Thus, satisfying two of the three elements. Whether or not the Defendants' acts were taken in good faith, or were not undertaken with malice, is (as described above) a question of intent for the jury. *Id.* at 482. Therefore, immunity should not be granted yet.

### V. CONCLUSION

For the reasons discussed herein,

IT IS ORDERED that Defendants' Motion for Summary Judgment [26] with regard to Plaintiff's state constitutional claims is **GRANTED**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment with regard to Plaintiff's malicious prosecutions claims, both federal and state, against Defendants Cates and Schneider, is **GRANTED**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment with regard to all of Plaintiff's remaining claims is **DENIED**.


Dated: February 4, 2016                    /s/Gershwin A Drain
Detroit, MI                                        HON. GERSHWIN A. DRAIN
                                                        United States District Court Judge